UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:05-cr-00047-JAW |
| | ) | |
| JOSEPH SCOTT REEVES | ) | |

**ORDER ON MOTION TO POSTPONE PAYMENT**

The Court rejects the Defendant's request that his restitution obligation be postponed until he is released from incarceration. The Court concludes that it did not improperly delegate to the Bureau of Prisons the authority to determine the amount and timing of restitution payments. It concludes that there is no evidence that the Defendant properly exhausted his administrative remedies or is in the proper district to challenge the Bureau of Prisons' Inmate Financial Responsibility Program. Finally, it concludes that the Defendant has failed to demonstrate a material change in his economic circumstances to justify a revision of the restitution provisions of the criminal judgment.

I.   BACKGROUND

   A.   Crime and Punishment

On Wednesday, September 25, 2002, Dean Cray left his residence on Route 151 in Palmyra, Maine at about 1:15 p.m. and when he returned at about 2:10 p.m., he discovered that his residence had been burglarized and that firearms and money had been stolen. *Prosecution Version and Factual Basis* (ECF No. 6). The burglars included Joseph Scott Reeves. *Id*. at 1. Mr. Reeves and his companions stole six firearms from Mr. Cray's residence: (1) a Herbert Schmidt .22. caliber revolver, (2) a

Remington 12 gauge pump shotgun, (3) an Ithaca Featherweight 12 gauge pump shotgun, (4) a Savage .22 magnum caliber bolt action rifle, (5) a 12 gauge pump shotgun, possibly made by Stevens Manufacturing, and (6) a Ruger .22 caliber semi-automatic pistol. *Id.* at 1-2.

Two nights later, Mr. Reeves was a passenger in a car in Milford, Maine and he asked the driver to park the car. *Id.* at 4. After she did so, he and Neal Ray Colby got out and ran up the road. *Id.* at 4. When Mr. Reeves and Mr. Colby returned to the car, they looked at each other, said "220", and told the driver to get out of there. *Id.* That next day, Mr. Reeves and Mr. Colby told the driver that they had gotten $220 from the clerk inside an Exxon station and the clerk was scared. *Id.* at 5. The clerk at the Exxon gas station store said that he was behind the counter when two white males entered the store carrying a pump shotgun and a long semi-automatic handgun. *Id.* at 6. They demanded money and ultimately the employee told them there was $220 in a money bag. *Id.* at 6-7.

Mr. Reeves had previously been convicted of two felonies: (1) obstruction of a corrections officer in federal court in New York, and (2) possession of a short-barreled shotgun in federal court in Maine. *Id.* at 11-12; *see Presentence Order* at 1-2 (ECF No. 26).

On June 15, 2005, Mr. Reeves pleaded guilty to a three-count information: (1) Count One, being a felon in possession of a firearm; (2) Count Two, engaging in a Hobbs Act Robbery; and (3) Count Three, use of a firearm during a federal crime of violence. *Information* (ECF No. 3); *Minute Entry* (ECF No. 7). On July 20, 2006, the

2

Court sentenced Mr. Reeves to 120 months on Count One and 178 months on Count Two to run concurrently, and 84 months on Count Three to run consecutively to Count Two. *J.* at 2 (ECF No. 29). The Court also required Mr. Reeves to pay restitution in the total amount of $1,633.00, a special assessment of $300.00 and a fine of $1,000.00. *Id.* at 5.

The restitution judgment reflected the losses to the victims from the two incidents: (1) $1,413.00 to Dean and Darlene Cray and Liberty Mutual Insurance Company; and (2) $220.00 to Francis and Heidi Carlow. *Id.* The $220.00 order of restitution was made joint and several with Neal Ray Colby, who was charged with the gas station robbery and who pleaded guilty, and at whose sentencing was also ordered to pay the $220.00 restitution to Mr. and Ms. Carlow. *J.* (Docket No. CR-02-93-B-W-002) (ECF No. 113).

### B. Joseph Scott Reeves Requests Restitution Payment Postponement

On December 10, 2014, the Court received a letter from Mr. Reeves, informing the Court that he was "currently facing a stressful issue." *Letter from Joseph Reeves to Judge Woodcock* (ECF No. 33) (*Reeves Letter*). He explained:

> I am being asked to make an FRP payment, and I get very little support from my family. The mere funds they send me are to be used to keep my family's communication. They are not the ones responsible for my fines. I need to stay connected to my family so I have someone there for me upon my release (in 10 years!). Because I am unable to pay the FRP, this institution has put me on restriction.
>
> I am asking that you help me by postponing my payments until I have the ability to earn, while I start my supervised release term, as it is

3

> usually requested in court. Please send the appropriate letter to the proper institution.
>
> Only my federal sentencing judge has the ability to postpone it. I don't have a lawyer, as I don't have the means to retain one for this matter. Hence, why I write to you directly.

*Id.* at 1-2.

## C. The Government Objects

On December 22, 2014, the Government filed an objection to Mr. Reeves' request. *Resp. by United States Opposing Def.'s Letter Mot. to Postpone Payment of Restitution* (ECF No. 35). The Government assumes that Mr. Reeves is referring to the restitution order and observes that 18 U.S.C. § 3664(k) applies, and argues that Mr. Reeves' request must be denied because he has failed to demonstrate any material change in his economic circumstances that would affect his ability to pay restitution. *Id.* at 1. The Government makes four points. First, it says that Mr. Reeves has failed to "meet his initial evidentiary burden of showing why his restitution should not continue during incarceration." *Id.* at 5. Second, it asserts that "there is every indication that Defendant can pay his restitution yet now simply refuses to do so." *Id.* Third, other courts have denied similar requests in similar situations. *Id.* Finally, to the extent that Mr. Reeves is complaining about restrictions that the Bureau of Prisons has placed upon him due to his failure to pay restitution, the Government says that he must bring his issue through a habeas corpus petition in the district where he is incarcerated and not in the district where he was sentenced. *Id.* at 7.

## D. The Government's Evidence

4

To buttress its objection, the Government submitted an affidavit from Sasha Labrenz, a case manager at the Federal Correctional Institution in Berlin, New Hampshire, where Mr. Reeves is currently being housed, and to the affidavit, the Government attached copies of documents confirming the contents of the affidavit. *Decl. of FCI Berlin Case Manager Sasha Labrenz* (ECF No. 36) (*Labrenz Decl.*). Ms. Labrenz stated that when Mr. Reeves arrived at FCI Berlin on October 16, 2014, he had been ordered to pay $1,633.00 in restitution. *Id.* at 1. This figure is consistent with the Judgment. *J.* at 6. Ms. Labrenz stated that Mr. Reeves previously participated in the Inmate Financial Responsibility Program (IFRP) and through his participation, he had paid $467.84, leaving a balance of $925.16 on his restitution obligation. *Id.* at 2.

Ms. Labrenz said that from June through December of 2014, Mr. Reeves' family sent him $1,758.20, which was deposited in his inmate account. *Id.* Between October and early December of 2014, Ms. Labrenz confirmed that Mr. Reeves received $595.00 into his inmate account and had spent $22.00 on telephone calls. *Id.* She also said that he had spent $330.30 at the commissary for snacks and clothing. *Id.*

Ms. Labrenz stated that on November 12, 2014, Mr. Reeves refused to participate in the IFRP and he has no documented medical reason for not participating in the IFRP. *Id.* at 3. Finally, she also noted that although work assignments are available to Mr. Reeves at FCI Berlin, he has not obtained a work assignment. *Id.*

E.     **Joseph Scott Reeves' Reply**

5

In his reply, Mr. Reeves states that "FCI Berlin Case Manager Sasha Labrenz makes it seem in her 'declaration' that the petitioner is having a great time during his prison term, by spending his limited funds [in] a reckless manner on: snack foods (potato chips, candy, cookies and cupcakes), etc. Assuredly he is not." *Mot. to Defer* at 2 (ECF No. 37) (*Def.'s Reply*). Mr. Reeves says that he has paid a total of $707.09 in restitution over the past seven years. *Id.* He maintains that there are no "jobs" at FCI Berlin "which would pay what the Bureau of Prisons is demanding from the petitioner for Financial Restitution Payments ($100.00 per month) which is a major factor in petitioner's request that his restitution payments be deferred until his release." *Id.* at 3.

Finally, Mr. Reeves claims that the restitution order itself is unlawful. *Id.* at 3. He explains that under *United States v. Merric*, 166 F.3d 406, 409 (1st Cir. 1999), the "judge, not a probation officer has the ability to set a schedule for payments." *Def.'s Reply* at 3. Mr. Reeves also cites a Second Circuit case, *United States v. Kassar*,[1] 47 F.3d 562, 568 (2d Cir. 1995) for the proposition that "the court cannot delegate the authority to the BOP for determining payments." *Def.'s Reply* at 3. He concludes that "[w]ithout a proper order, the BOP lacks authority to require a payment schedule" and in this instance, "no payment schedule was set by the court." *Id.* In sum, Mr. Reeves argues that the "BOP has no authority to act as a collection agency." *Id.*

---

[1]  Mr. Reeves cited this case as *United States v. Hassan. Def.'s Reply* at 3. However, as the Government pointed out, the correct name is *United States v. Kassar. See United States' Sur-Reply in Opp'n to Pet'r's Challenge to the Court's Restitution Order* at 1 n.1 (ECF No. 40).

6

### F. Government's Sur-Reply

In view of the new argument in Mr. Reeves' reply, the Government moved for and was granted the right to file a sur-reply. *United States' Req. for Leave to File Sur-Reply* (ECF No. 38); *Order Granting Mot. for Leave to File Sur-Reply* (ECF No. 39). On January 28, 2015, the Government filed its sur-reply. *United States' Sur-Reply in Opp'n to Pet'r's Challenge to the Court's Restitution Order* (ECF No. 40). The Government argues that "[t]he Court did not unlawfully delegate its authority to the Bureau of Prisons to designate the timing and amount of Petitioner's restitution payments through the [IFRP]." *Id.* at 2. The Government points out that the restitution order in this case stipulated that the full amount of the restitution was "due immediately" and further provided that "[a]ny amount that the defendant is unable to pay now [is] due and payable during the term of incarceration." *Id.* (quoting *J.* at 6).

The Government contends that the First Circuit has upheld this type of restitution order. *Id.* at 2. Citing *Bramson v. Winn*, 136 Fed. App'x 380 (1st Cir. 2005), the Government contends that where payment is due immediately, "there was no improper delegation by the courts of their exclusive authority to determine a payment schedule" because the BOP "was merely using the IFRP to collect [defendant's] court-ordered payments." *Gov't's Sur-Reply* at 2 (quoting *Bramson*, 136 Fed. App'x at 381). Finally, the Government points out that there is no evidence that the BOP ever set an IFRP payment schedule under which Mr. Reeves was actually required to pay his outstanding restitution. *Id.* at 2-3.

7

## II. DISCUSSION

### A. The Legality of the Restitution Order

As to the legality of the restitution order, the First Circuit in *Bramson* clarified that if—as happened in this case—the Court orders the restitution "due immediately", then the Court is not "delegat[ing] the setting of payment schedules to . . . the [BOP]." *Bramson*, 136 Fed. App'x at 381. In other words, "[b]y imposing restitution and making it due immediately, the court, not the Bureau, set the amount due and the schedule to be met." *United States v. Marston*, No. 09-cr-95-1-SM, 2012 U.S. Dist. LEXIS 122607, at *2 (D.N.H. Aug. 29, 2012).

As to Mr. Reeves' contention that the BOP has no authority to act as a collection agency, he is incorrect. "[I]t is clear that the Bureau may administer collection of such payments through the IFRP when a sentencing court has, as in this case, ordered immediate payment." *Id.*; *see Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002); *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999).

### B. The IFRP: The Exhaustion Requirement and The Right District

Mr. Reeves' argument is not really with the Court's restitution order or its authority. Instead, he admits that the "major factor" in his request is that the BOP is "demanding from the petitioner" $100 per month, a figure he believes is excessive. *Def.'s Reply* at 3. He makes the point that the effect of the IFRP calculation would be that his family contributions would become the source of the money for payment of restitution and he, not his family, should be responsible for paying restitution to the victims of his crime. *Reeves Letter* at 1.

8

But to challenge the IFRP calculation, Mr. Reeve must first be part of the IFRP and on November 12, 2014, he withdrew from the IFRP. Furthermore, if he were part of the IFRP and wished to challenge the BOP's calculation, he would first be required to exhaust his administrative remedies and, if not satisfied, any court challenge "must be brought as a habeas petition pursuant to 28 U.S.C. § 2241 in the district in which the defendant is incarcerated." *United States v. Fenton*, 577 F. Supp. 2d 458, 459 (D. Me. 2008).

### C. BOP Restrictions for Failure to Participate in IFRP

In his letter, Mr. Reeves complained about being placed on restrictions as a consequence of refusing to participate in the IFRP. *Reeves Letter* at 1 ("Because I am unable to pay the FRP, this institution has put me on restriction"). Although he does not describe the exact restriction, it is true that by regulation, the BOP imposes a number of restrictions on inmates who refuse to participate in the IFRP. *See* 28 C.F.R. § 545.11(d)(1)-(11). Courts have rejected the contention that the BOP is not authorized to impose restrictions in accordance with the regulation against inmates who decide not to participate in IFRP. *See Pack v. Luczycki*, 93-CV-38, 1994 U.S. Dist. LEXIS 21532 (N.D.N.Y. July 27, 1994) ("The sanctions to which plaintiff were subjected are permissible if a prisoner refuses to participate in the IFRP").

### D. Material Change in Economic Circumstances

To the extent Mr. Reeves is seeking a revision of the judgment based on changed economic circumstances, he has failed to demonstrate a material change in his economic circumstances to justify such a revision. *See* 18 U.S.C. § 3664(k); *United*

9

*States v. Teeter*, 99-cr-35-GZS, 2011 U.S. Dist. LEXIS 44535, *2 (D. Me. Apr. 25, 2011). To the contrary, it appears from the information in this record that from December 11, 2007 through September 9, 2014, Mr. Reeves was making slow but steady progress paying down the restitution he owed the victims.[2] *Labrenz Decl.* Ex. A.

III. **CONCLUSION**

The Court DENIES Joseph Scott Reeves' motion to postpone payment of restitution until his release from incarceration (ECF No. 33).

**SO ORDERED.**

/s/John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of February, 2015

---

[2] The numbers do not seem to add up. The Court ordered a special assessment of $100 per count for a total of $300. *J.* at 5. Ms. Labrenz stated that Mr. Reeves paid the full $300 between 2007 and 2009. *Labrenz Decl.* at 2. The Court ordered restitution in the total amount of $1,633.00. *J.* at 5. Ms. Labrenz stated that Mr. Reeves had paid a total of $467.84 in restitution under the IFRP from 2010 through 2014, leaving a total of $925.16 outstanding. *Labrenz Decl.* But $467.84 plus $925.16 does not equal $1,633.00. It may be that Mr. Reeves paid restitution from sources other than the IFRP. It may also be that Neal Ray Colby paid some of the restitution on the $220.00 for the Hobbs Act robbery that he and Mr. Reeves owed jointly and severally. The docket in Mr. Colby's case indicates that the $220.00 had been paid in full as of October 10, 2007. *Minute Entry* (ECF No. 151), Docket No. 02-cr-93-JAW. Adding $220 to Ms. Labrenz's figure comes close to $1,633.00.